COMPAGNIE DE TREFILERIES AND LAMINOIRS DU HAVRE, Respondent, v. FRANCE AND CANADA STEAMSHIP COMPANY, LIMITED, Appellant.

First Department, July 2, 1920.

**Contracts — contract to transport freight to foreign country during war — war clauses — discontinuance of service by defendant — liability for excess freight rates paid by plaintiff.**

The defendant agreed to transport 3,000 tons of copper for the plaintiff from New York to Genoa upon steamships of the defendant during December, 1916, and January, 1917. The contract provided that it was subject to the usual war clauses permitting the defendant to limit or discontinue its service because of the danger. The defendant offered to transport copper in December, but at that time the plaintiff had no copper to ship and the next boat of the defendant which left for Genoa was in March and upon that boat defendant carried a part of the copper contracted. Shortly thereafter the plaintiff notified the defendant that being unable to obtain shipment on its line it would ship on other lines, and did so at an increased freight rate. In an action to recover the difference in the freight rates, it appeared that two of the defendant's boats had been torpedoed and that the only ones that sailed for Genoa were the ones that left in December and March, and that the defendant offered to ship the copper to France.

*Held*, that under the terms of the contract the defendant had the clear right to discontinue its service in view of the perils of transportation to Genoa, and especially in view of the fact that one of its ships had been torpedoed, and that the defendant is not chargeable with liability because it failed to cancel the contract as it might have done, but made an effort after the expiration of the term to fulfill by offering to take the copper on the first boat sailing for Genoa.

APPEAL by the defendant, France and Canada Steamship Company, Limited, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 4th day of March, 1920, upon the report of a referee awarding damages for a breach of a contract whereby plaintiff agreed to ship and defendant to carry 3,000 tons of copper from New York to Genoa upon steamships of defendant during December, 1916, and January, 1917.

*J. Culbert Palmer* of counsel [*Edward J. Patterson* and *Carroll G. Walter* with him on the brief], *Patterson, Eagle, Greenough & Day,* attorneys, for the appellant.

*Paris S. Russell* of counsel [*Montague Lessler* with him on the brief], *John Ingle, Jr.,* attorney, for the respondent.

Smith, J.:

This judgment was obtained after a trial before a referee. In the contract it was provided that it was subject to the usual war clauses. By the eighteenth finding of fact of the referee it was found that the war clause "A" set forth in paragraph 11 of the answer applied only to shipments by American vessels, while the war clause " B " applied only to shipments by British vessels, and the war clauses " C " and " D " applied to shipments by all vessels. The defendant was not a common carrier, but was privately operating seven vessels, one a British vessel, which they were forbidden to take into the Mediterranean. There were six American vessels, two of which were torpedoed. On December eighth one of the defendant's vessels sailed for Genoa, and the plaintiff was informed that the defendant would take whatever copper the plaintiff desired to ship thereupon. The defendant was informed by Elliott, the shipbroker acting for the plaintiff, that they had no copper then which they wished to send. The only vessel thereafter sailing before May fifteenth was the *Missourian,* which sailed for Genoa on March 19, 1917. Upon that vessel they took 750 tons from the plaintiff to Genoa. On May fifteenth the plaintiff notified the defendant that, being unable to obtain shipments upon their line, they would ship on other lines and did, in fact, ship upon an Italian line for which they paid freight rates in excess of the freight rates provided for in the contract between the plaintiff and the defendant. The judgment represents the difference in the freight rates which the plaintiff was compelled to pay.

There are a number of questions raised by the defendant, but as I view the case it will only be necessary to consider two of them in order to determine the defendant's liability. The war clause "A" which applied to the American ships reads as follows: " This contract is made subject to conditions

of Act of Congress governing B's/L approved February 13, 1893* and to terms B's/L in use by steamer's agents including attached War Clause and is further conditional upon the continuance of the steamship company's services and the sailing of its steamer and if at any time in the judgment of the steamship company's conditions of war hostility actual or threatened as such to make it unsafe or unprudent for its vessels to sail, the sailing of any vessel or vessels may be postponed or cancelled and in that event the steamship company may at its option, cancel this contract and shall be relieved thereafter from any liability hereunder except the return to the shippers whatever cargo may have been already received under this contract." War clause " C " refers to vessels of all nationalities and reads as follows: " When and so long as a state of war exists between any two European powers, the ship owners and/or its agents and/or the master may at any time either before or after the commencement of the voyage, abandon the voyage in whole or in part, or alter or vary the proposed or advertised or agreed route, and the ship may before proceeding to port of final destination, proceed to any port or ports on any coast or coasts of Europe and/or of the British Isles, in any order, and whether to discharge and/or load passengers or cargo consigned to or from any such port or ports, or for any other purpose whatsoever, and neither the shipper nor the consignee nor the holder of the Bill of Lading shall have any claim against the ship-owner or his agents, or the master for any loss or damage which he may sustain directly or indirectly by reason of any of the matters herein provided for or by reason of any damage to or diminution in value of the goods in consequence thereof." These are found to be the usual war clauses subject to which this contract was made.

The good faith of the steamship company cannot be here questioned. The only two vessels which sailed after the first of December and before the fifteenth of May, when the plaintiff canceled the contract, were the *Mexican* and the *Missourian.* Upon the *Mexican* the defendant offered to transport any copper that the plaintiff desired to transport, and upon the

---

* See 27 U. S. Stat. at Large, 445, chap. 105.— [REP.

*Missourian* the defendant did, in fact, transport 750 tons of the 3,000 tons which they agreed to transport, so that the defendant gave to the plaintiff every opportunity that could be given in view of the dangers of the service to Genoa. The defendant offered to ship this copper to France, which offer the plaintiff refused to accept. The learned referee says that the defendant did not cancel the contract as might have been done under these clauses, but offered to take the copper upon the first ship sailing to Genoa. It seems to me a strange holding to charge the defendant with liability for its evident effort to carry out the contract by this offer made when, confessedly, the defendant had the right to cancel the contract by reason of the existing war conditions. It is further claimed that the defendant did not deny liability by reason of any of these war clauses, but afterwards asserted that it was not liable under the contract. There is no claim that the plaintiff was in any way misled by any reason so assigned by the defendant. Moreover, the claim that the defendant was not liable upon the contract might well be interpreted as a claim that the defendant was not bound to furnish transportation, in view of its discontinuing its service by reason of the dangers arising from existing conditions. Under these clauses, therefore, I think the defendant was fully relieved of any liability by reason of its failure to furnish transportation. There is no claim of preference given to other consignors, and under the terms of the contract the defendant had the clear right to discontinue its service in view of the perils of transportation to Genoa, and especially in view of the fact that one of its ships had been torpedoed. During the time before the cancellation of the contract the charter upon the American vessels expired and the owners would not renew the same. The defendant's offer to take the copper upon the first steamship sailing to Genoa was a full compliance with its contract to make the shipment subject to these war clauses.

The judgment should, therefore, be reversed, with costs, and the complaint dismissed, with costs.

The court reverses the finding of the referee that the defendant failed to perform the contract upon its part and specifically finding 21 in the referee's report, and reverses

Nos. 3, 4, 5, 7 and 9 in the referee's conclusions of law. This court finds that the defendant failed to carry the copper for the plaintiff because of its determination in good faith that conditions of war hostility rendered it unsafe and imprudent for its vessels to sail to the port of Genoa, and further finds that the defendant in good faith abandoned its voyages to Genoa, except those taken by the ship *Mexican* and the ship *Missourian,* by reason of the danger threatened to such ships making such trips. This court further finds that the defendant offered to take the copper and to land the same in a port in France, which offer was declined by the plaintiff.

CLARKE, P. J., DOWLING, PAGE and GREENBAUM, JJ., concur.

Judgment reversed, with costs, and complaint dismissed, with costs. Settle order on notice.